UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:
                                        Chapter 13

Victor M. Abreu
*aka* Victor Manuel Abreu Pina,
                                        Case No. 1-15-44844-nhl

                     Debtor.
------------------------------------------------------------X

## DECISION ON MOTION FOR VALUATION OF COLLATERAL, BIFURCATION OF CLAIMS, AND VOIDING OF LIENS PURSUANT TO 11 U.S.C. § 506

**Attorneys and Law Firms:**

| | |
|---|---|
| Dennis Jose, Esq. | Brian McCaffrey, Esq. |
| Gross Polowy, LLC | Brian McCaffrey, P.C. |
| 1775 Wehrle Drive, Suite 100 | 88-18 Sutphin Boulevard, 1st Floor |
| Williamsville, NY 14221 | Jamaica, NY 11435 |
| *Attorney for Wells Fargo Bank, NA* | *Attorney for Debtor* |

HON. NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion (the "Motion") of Victor M. Abreu, a chapter 13 debtor (the "Debtor"), seeking to modify a first mortgage lien on real property pursuant to 11 U.S.C. § 506. Mot. for Valuation, ECF No. 7. Wells Fargo Bank, N.A. ("Wells Fargo"), the mortgagee, opposes the Motion, arguing, in part, (1) that the Debtor does not meet the requirements for modification imposed by 11 U.S.C. § 1322(b)(2) because the property in question, located at 8 The Boulevard, New Rochelle, New York 10801 (the "Property"), is the Debtor's principal residence; and (2) that because the Debtor is not the mortgagor, his lack of privity with Wells Fargo prohibits him from modifying the mortgage under a chapter 13 plan. Aff. in Opp. to Mot., ECF No. 30; Suppl. Aff. in Opp. to Mot., ECF No. 33; Sec. Suppl. Aff. in Opp. to Mot., ECF No. 34.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K). This decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## II. BACKGROUND

The Property was previously titled to Dario Obregon ("Obregon"), who, on August 30, 2006, executed a note and mortgage in favor of Wells Fargo. June 15 Tr. 10–11, ECF No. 38; Suppl. Aff. in Rep. ¶ 3, ECF No. 31. On December 5, 2006, Obregon, without obtaining any signature or other manner of consent from Wells Fargo, transferred fee title to the Debtor. Suppl. Aff. ¶¶ 4–5, ECF No. 31. The Debtor did not assume the note and mortgage, though he alleges that he made the mortgage payments to Wells Fargo from December 2006 through January 2008. *Id.* at ¶ 7; June 15 Tr. 24, ECF No. 38.

On May 14, 2008, Wells Fargo commenced a foreclosure action with respect to the Property in the Supreme Court of New York for Westchester County, in which the Debtor, Obregon, and American Brokers Conduit were named defendants. Suppl. Aff. Exhibit C, ECF No. 31-3. In order to stay the foreclosure, the Debtor initiated two separate bankruptcy cases in the Southern District of New York, one in 2013 and another in 2015, in which he listed the Property as his primary residence. June 15 Tr. 13, 18, ECF No. 38. On October 28, 2015 (the "Filing Date"), the Debtor filed the instant voluntary petition under chapter 13 (the "Petition").

At an evidentiary hearing on the Motion, the Debtor, through an interpreter, offered testimony about his residential history. *See Id.* at 7. Starting in December of 2006, after acquiring title from Obregon, the Debtor lived in the Property for approximately three months. *Id.* at 10–12. From that point forward, for a period of about seven or eight years, the Debtor lived with his daughter at 190 South 8th Street in Brooklyn, New York. *Id.* at 10, 15. The Debtor then moved with his daughter to 375 Bath Avenue, in Brooklyn, New York, where he resided until approximately August 2015. *Id.* at 16–17. Around that time, he again moved with his daughter to 54 Bay 29th Street in Brooklyn, New York. *Id.* at 14–15. The Debtor testified that he lived at the 375 Bath Avenue address despite listing the Property as his principal residence in the two previous bankruptcy cases in the Southern District. *Id.* at 17. In the instant case, the Debtor listed the Property as his "Primary Residence" on his Schedule A. Ch. 13 Pet. 9, ECF No. 1. However, the Petition lists "54 Bay 29th Street, Apt 15B Brooklyn, NY" as the Debtor's street address. *See id.* at 1.

The Debtor argues that modification of the lien is permissible here because the Property is not his principal residence, but rather an investment property. Mot. ¶¶ 5, 8, ECF No. 7. Wells Fargo disputes this point by citing the classification of the Property in the Debtor's prior filings

and the Debtor's instant Schedule A. Alternatively, Wells Fargo argues that, even if the Property is not the Debtor's principal residence, he is still not entitled to modify the mortgage because he is not the mortgagor and therefore not in privity with Wells Fargo. Aff. in Opp. ¶¶ 7–8, ECF No. 30. The Debtor contends that privity is not determinative; rather, it is Wells Fargo's *in rem* rights against the Property that make the bank the holder of a "claim" under 11 U.S.C. § 1322, which in turn permits modification of the mortgage. Suppl. Aff. ¶¶ 24, 28, ECF No. 31. Finally, Wells Fargo claims that, regardless of how the above factual and legal issues are resolved, the Debtor has commenced this case in bad faith, and, for that reason, should not be entitled to the benefit of modification under § 1322. The parties agree that, should all of these points be decided in the Debtor's favor, the Court must determine the Property's value.

### III. APPLICABLE LAW

The valuation of a secured claim is governed by 11 U.S.C. § 506(a), which provides in pertinent part that

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a). A debtor may void the unsecured portion of a lien "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim." 11 U.S.C. § 506(d).

In turn, 11 U.S.C. § 1325(a)(5)(B) requires payment based on the value determined under § 506. Bankruptcy courts are required to ensure that, over the life of a chapter 13 plan, the holder of a secured claim receives the "value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [] not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). However, § 1322 does not allow for a debtor to modify the

3

rights of a secured creditor whose "claim [is] secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

## IV. DISCUSSION

### A. Principal Residence

The term "debtor's principal residence" that appears in § 1322(b)(2) is a defined term within the Code.[1] According to 11 U.S.C. § 101(13A), a "debtor's principal residence" is "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property." 11 U.S.C. § 101(13A)(A). The text provides that whether a structure is a debtor's principal residence is, rather simply, a question of whether it is "used as" such. *See In re Schayes*, 483 B.R. 209, 213 (Bankr. D. Ariz. 2012) ("[T]he definition of 'principal residence' in § 101(13A) unambiguously hinges on how the debtor actually uses the structure, not the debtor's intentions at any point in time."); *In re Laycock*, 497 B.R. 396, 399 (Bankr. S.D.N.Y. 2013) (quoting *Schayes*, 483 B.R. at 213)*; see also In re Addams*, Case No.: 8-15-75191-AST, 2017 WL 944190, at *4 (Bankr. E.D.N.Y. Mar. 9, 2017) ("This Court's analysis necessarily begins by looking to the language of the statute itself to determine if the statute is plain or ambiguous." (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012)). Though "residence" alone is not defined by the Code, it has been defined elsewhere as "the place where one actually lives." *See Schayes*, 483 B.R. at 213 (citing *Residence*, Black's Law Dictionary 1423 (9th ed. 2009)). Furthermore, as the Code includes references to both "residence" and "principal residence," the inclusion of "principal" must signal a substantive difference between the terms, or its use would be superfluous. *See In re Lawrence*, 469 B.R. 140, 142 (Bankr. D. Mass. 2012) (finding that Congress was deliberate in

---

[1] References to the "Code" are to 11 U.S.C. § 101 *et seq.*

distinguishing "residence" from "principal residence"); *In re Demeter*, 478 B.R. 281, 289 (Bankr. E.D. Mich. 2012) (discussing *Lawrence*). When the definition of "residence" articulated in *Schayes* is modified by "principal," as that word is commonly understood, the resulting term would mean the *primary* place where one actually lives. *See Lawrence*, 469 B.R. at 142; *Schayes*, 483 B.R. at 213. In other words, an individual's residence becomes her principal residence when that structure, more than any other, is used as a living space.

While the Debtor's account of where he lived over the past ten years is less than precise, constructing an exact timeline of the Debtor's past principal residences is not the focus of the instant inquiry. This is because the Court is required to determine the Debtor's principal residence as of the time of the bankruptcy filing. *Schayes*, 483 B.R. at 214; *see also In re Jordan*, 330 B.R. 857, 859–60 (Bankr. M.D. Ga. 2005) (looking to "the circumstances at the time of filing the petition"). Thus, the question that must be answered is whether, as of the Filing Date, the Debtor had been living in the Property more than he had been living elsewhere.

The record before the Court reflects that, as of the Filing Date, the Debtor did not live at the Property at all, and had not done so for at least a number of years. The Debtor's Petition states that, on the Filing Date, his street address was 54 Bay 29th Street. Further, he testified to the fact that he does not currently live at the Property, but instead at the 54 Bay 29th Street address. June 15 Tr. 10–16, ECF No. 38. While he acknowledged that in his prior bankruptcy petitions he listed—and, apparently, believed—that his principal residence was the Property, he further testified that he was residing elsewhere at the time of those filings. *Id.* at 22–23. When asked why he put the Property as his residence in the previous two filings, the Debtor claimed that Obregon "gave me that house and that was what I was supposed to do." *Id.* at 13.

Wells Fargo relies on the Debtor's Schedule A and a copy of the deed as evidence that the Property was the Debtor's principal residence as of the Filing Date. Aff. in Opp. ¶ 2, ECF No. 30. While the Debtor's Schedule A lists the Property as his "Primary Residence," directly underneath that statement is another claiming that the Debtor will file a motion to cram down the value of the Property. Ch. 13 Pet. 9, ECF No. 1. Taken in the context of the Debtor's testimony, the inconsistencies regarding "principal residence" appear to be in large part a product of the Debtor's limited English language proficiency, and failure to appreciate the nuances and distinctions between the terms and meanings that might apply to residential property. The following exchange between the Debtor and his counsel during the Debtor's direct testimony is telling.

> Q. Look at the paper that's before you, Mr. Abreu. Now, it seems that on this piece of paper you claimed that 8 The Boulevard was your home in February 2015. Is that right?
> A. Yes.
> Q. And was it, in fact, your home at the time?
> A. Yes.
> Q. You lived at 8 The Boulevard in February 2015?
> A. No.
> Q. Why did you indicate on this piece of paper that it was your home?
> A. Because in fact or in reality, the house appeared to be as mine.

June 15 Tr. 20, ECF No. 38. The same is true of a later exchange between the two.

> Q. When you stated in your 2013 and 2015 bankruptcy petitions that 8 The Boulevard was your primary residence, why did you do that?
> A. Because in fact, at that time, it was my residence at that time [sic].
> Q. You mean you were living there at that time?
> A. I was *not* living there.

*Id*. at 22–23 (emphasis added). In both instances, without any apparent recognition of contradiction, the Debtor used two terms that denote that a place is being lived in—"home" and "residence"—to describe a property in which, he consistently asserted, he did not live. The Court concludes that the Debtor did not misrepresent the status of the Property, but instead misunderstood that status, or at least how that status should be described.

In addition, the deed fails to bolster Wells Fargo's argument that the Property was the Debtor's principal residence as of the Filing Date. While the deed does list the Property as the Debtor's residence, it was executed on December 5, 2006, Aff. in Opp. Exhibit B, ECF No. 30-2, which is consistent with the Debtor's testimony that he resided in the Property for three months beginning at that time, June 15 Tr. 10, ECF No. 38.

Accordingly, taking together what the evidence exposed about the Debtor's understanding of past representations to other courts, and applying all of the evidence, including the Debtor's testimony, which this Court found highly credible, the Court must conclude that the Property was not, at the Filing Date or for some years before, the Debtor's residence. And, since it was not his residence at all, it could not have been his principal residence for the purpose of § 1322(b)(2).

Furthermore, having made these findings, the Court must also reject Wells Fargo's contention that the Debtor commenced this case and brought the Motion as a part of a larger bad faith attempt to simply thwart a foreclosure sale of the Property. *See* Sec. Suppl. Aff. ¶¶ 7–14, ECF No. 34. Assessing good faith requires that the Court look to "the 'totality of the circumstances' [to] determin[e] whether the debtor displayed 'honesty of intention,' and 'requires a bankruptcy court to "inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed the plan in an inequitable matter."'" *In re Plagakis*, No. 03 CV 0728(SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004) (quoting *In re Johnson*, 708 F.2d 865, 868 (2d Cir. 1983); *In re Kevorn*, 181 B.R. 8, 10 (Bankr. N.D.N.Y. 1995)). As discussed above, the Court finds no intentional misrepresentation or manipulation on the Debtor's part. While his prior filings and the absence of creditors other than Wells Faro are arguably indicative of bad faith, neither is determinative. *See In re Lin*, 499 B.R. 430, 435–38 (Bankr. S.D.N.Y. 2013); *Plagakis*, 2004 WL 203090, at *4. Considered against the entirety of the evidence presented, those

facts do not negate the conclusion that the Debtor is currently engaged in an honest attempt to save the Property while paying Wells Fargo in accordance with the applicable provisions of the Code. *See In re Brown*, 402 B.R. 384, 401 (Bankr. M.D. Fla. 2008) ("The 'guiding principal' in a good faith analysis 'is whether the debtor's proposed Chapter 13 plan demonstrates a sincere intent to repay his creditors to the best of his ability as opposed to instead demonstrating an attempt to defer or avoid the claims of legitimate creditors.'" (quoting *Florida, Dep't of Revenue v. Talley*, No. 3:07-cv-510-J16, 2008 WL 1711410, at *3 (M.D. Fla. Apr. 10, 2008)). The Court therefore finds that both the Petition and the Motion were filed in good faith.

### B. Contractual Privity

In light of the determination that the Property is not the Debtor's principal residence, a lien on the Property may be subject to modification if the lien constitutes "a claim." *See* 11 U.S.C. § 1322(b)(2); *see also* 11 U.S.C. § 101(5) ("The term 'claim' means— (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . ."); 11 U.S.C. § 102(2) ("'[C]laim against the debtor' includes claim against property of the debtor . . . ."). Wells Fargo takes the position that there is no privity between it and the Debtor because the Debtor is not the mortgagor, and is not personally obligated on the underlying loan documents, and that this lack of privity means that it cannot hold a "claim" within the meaning of § 1322. Aff. in Opp. ¶ 7, ECF No. 30. The Debtor, for his part, argues that Wells Fargo holds a claim to the extent that the mortgage is enforceable against the Debtor's property, and that this position is supported by the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78 (1991).

Before the *Johnson* Court was the issue of whether a "chapter 20" debtor, once relieved of his personal liability under the mortgage because of a chapter 7 discharge, could nevertheless cure the mortgage arrears through a plan in a subsequent chapter 13. *Johnson*, 501 U.S. at 80–84. This query required the Court to determine whether the creditor held a "claim" against the debtor's estate despite the absence of personal liability. *See id.* at 83. The Supreme Court held that even if a debtor had been discharged of his personal liability on a mortgage loan, the creditor's right to proceed *in rem* constituted a "claim" subject to inclusion in a chapter 13 plan. *Id.* at 84 ("[W]e have no trouble concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5). Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property."). Significantly, the *Johnson* Court's review of the legislative history of § 101(5) led it to conclude that "an obligation enforceable only against a debtor's property would be a 'claim' under § 101(5) of the Code." *Id.* at 86. Furthermore, looking to § 102(2), the Court explained that the section "extend[s] to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence." *Id.* at 87.

Contrary to Wells Fargo's claim that *Johnson* is to be limited exclusively to "chapter 20" situations, the language used by the Court suggests that *Johnson*'s construction of "claim" applies to situations in which a creditor possesses *in rem* rights against a debtor's property more generally. Indeed, bankruptcy cases within this District have relied on *Johnson*'s language to reach that very conclusion. Under circumstances virtually indistinguishable from these, in which property subject to a mortgage is conveyed to a debtor without an assignment of the mortgage, the case law provides that a mortgagee holds a "claim" for the purpose of § 1322. *See, e.g.*, *In re Allston*, 206 B.R. 297,

298–300 (Bankr. E.D.N.Y. 1997) (finding that a mortgagee holds a claim against the debtors' estate for the purpose of § 1322(b)(2), (5) and (6), after title was transferred from the mortgagor to the debtors without the mortgagee's consent); *In re Rutledge*, 208 B.R. 624, 628 (Bankr. E.D.N.Y. 1997) (holding that a chapter 13 debtor could cure a prepetition mortgage default through a chapter 13 plan as a "claim" against the estate even though the debtor lacked privity with the mortgagee); *see also In re Wilcox*, 209 B.R. 181, 182–83 (Bankr. E.D.N.Y. 1996) (holding that a chapter 13 debtor may repay a mortgage debt through a plan pursuant to §§ 101(5) and 1322(b)(2), (5), and (6), when the debtor acquired the subject property through devise and the mortgage matured, prepetition, upon the mortgagor-decedent's death).

Other courts have also adopted this reading of *Johnson*, and applied its holding to situations outside of a "chapter 20" scenario. *See In re Curinton*, 300 B.R. 78, 80 (Bankr. M.D. Fla. 2003) (collecting a number of cases from a wide range of jurisdictions that have chosen to interpret the term "claim" broadly, as done by the *Johnson* court); *see also Matter of Hutcherson*, 186 B.R. 546, 551 (Bankr. N.D. Ga. 1995) (applying *Johnson* to find that a mortgagee had a claim against a debtor's estate where the debtor acquired property by devise, but was not in privity with the mortgagee); *In re Lumpkin*, 144 B.R. 240, 242 (Bankr. D. Conn. 1992) ("[A] chapter 13 plan may deal with a claim where there is no personal liability no matter what circumstances underlay the lack of personal liability.").

The Court is not persuaded that the case law presented by Wells Fargo dictates a contrary conclusion. In *In re Kizelnik*, the court was faced with a chapter 13 debtor who was a tenant in a mortgaged property. *See Kizelnik*, 190 B.R. 171, 173 (Bankr. S.D.N.Y. 1995). The debtor was not the mortgagor, did not own the property in question, and had no personal liability on the mortgage; as the court points out, she was, in every relevant sense, a "stranger to the mortgage indebtedness."

*Id.* Nevertheless, she sought to stay a foreclosure sale on the property, de-accelerate and reinstate the mortgage, and pay the arrears though her chapter 13 plan. *Id.* The court denied that she had standing to do so, and further declined to extend *Johnson* beyond its own facts. *Id.* at 179. It reasoned that extending *Johnson* beyond the "chapter 20" scenario—no less to a situation in which the debtor seeking to stay a foreclosure is a "stranger"—would "offend traditional commercial and contract law precepts." *Id.*

Unlike the debtor in *Kizelnik*, the Debtor here is not a stranger to the mortgage indebtedness. The mortgage provides Wells Fargo with *in rem* rights against Property that the Debtor undisputedly owns. This relationship, which is the basis of Wells Fargo's "claim," is entirely absent in *Kizelnik*. As for offending traditional state law principles, it is far from unusual that the "the Bankruptcy Code supersedes state law property rights." *Rutledge*, 208 B.R. at 627 (citing *In re Taddeo*, 685 F.2d 24 (2d Cir. 1982)).

In the second case relied on by Wells Fargo, *Pescrillo v. HSBC Bank U.S.A. National Ass'n*, No. 14-CV-1083S, 2015 WL 417659 (W.D.N.Y. Jan. 30, 2015), the court affirmed the bankruptcy court's decision granting relief from the automatic stay based on a debtor's lack of privity with the mortgagee. *Pescrillo*, 2015 WL 417659, at *1. The court's basis for affirming was that *In re Parks*, 227 B.R. 20 (W.D.N.Y. 1998), which rejects the conclusion that a debtor not in privity with a mortgagee can modify a mortgage, "has been the governing standard in [the Western District of New York] for 16 years." *Pescrillo*, 2015 WL 417659, at *2. *Parks*, of course, is not controlling here; but, to the extent that it might be persuasive, it falls short because it does not consider *Johnson* in reaching its conclusion. *See Parks*, 227 B.R. at 20–25. Additionally, while the *Pescrillo* court does consider *Johnson*, this Court disagrees with its finding that *Johnson* simply does not apply to a scenario in which there is no privity, and in so doing aligns itself with the prevailing view in this

11

District, as set forth above. Accordingly, *Johnson* applies under the instant circumstances, and Wells Fargo holds a claim under § 1322.[2]

*[The remainder of this page is intentionally left blank.]*

---

[2] As the Court concludes that privity is not required, it need not consider the Debtor's argument that Wells Fargo's failure to trigger a "due on sale" clause in the mortgage, and its acceptance of payments, created privity between the parties. *See* Suppl. Aff. ¶¶ 29–28, ECF No. 31.

## V. CONCLUSION

For the foregoing reasons, the Debtor's motion for valuation of collateral, bifurcation of claims, and valuation of liens is granted to the extent that the Debtor is entitled to modify the lien pursuant to §§ 506 and 1322. The extent to which Wells Fargo's secured claim is to be reduced will be the subject of a continued evidentiary hearing, to be scheduled by the Court.

A separate order will issue.



Dated: September 25, 2017  
Brooklyn, New York

_Nancy Hershey Lord_  
Nancy Hershey Lord  
United States Bankruptcy Judge